UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN MARIE WAGAMAN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Hon. Robert J. Jonker

Case No. 1:23-cv-1367

# REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record and provides that, if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether

there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on January 11, 2019, alleging that she became disabled as of August 16, 2018, due to arterial blockage in her left arm, vein removal from her left leg, chronic pain, numbness and loss of strength in her left arm, nerve damage in her left arm, back pain, depression, anxiety, and factor V leiden. (PageID.147, 385–88.) Plaintiff was age 50 at the time of her alleged onset date. (PageID.147.) She had obtained a GED and had past work as a Customer Service Representative, a Returns Clerk, and an Order Clerk. (PageID.64, 423–24.)

Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).

On May 21, 2021, ALJ Michael Condon held a hearing and received testimony from Plaintiff and an impartial vocational expert (VE). (PageID.104–40.) On June 15, 2021, ALJ Condon issued a written decision finding that Plaintiff was not disabled from her alleged onset date through the date of decision. (PageID.185–98.) Plaintiff sought review by the Appeals Council, which remanded the matter on May 31, 2022, for further administrative proceedings. (PageID.204–07.) On September 28, 2022, ALJ Donna J. Grit held a telephone hearing and received testimony from Plaintiff and VE Jessica Coles. (PageID.73–103.) On October 11, 2022, ALJ Grit issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled from her alleged onset date through the date of the decision. (PageID.52–66.) The Appeals Council denied Plaintiff's request for review on September 8, 2023. (PageID.32–35.) ALJ Grit's ruling thus became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on December 28, 2023.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the insured status requirements of the Act through December 31, 2023, and had not engaged in substantial gainful activity since her alleged onset date of August 16, 2018, the ALJ found that Plaintiff suffered from severe impairments of status-

---

Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

post blood clot in the left upper extremity/status post bypass graft; Factor V Leiden/lupus anticoagulant; complex regional pain syndrome (CRPS) of the left upper extremity; impingement syndrome and arthritis/partial rotator cuff tear of the right shoulder, post arthroscopic surgery; degenerative joint disease of the right shoulder; post-traumatic stress disorder (PTSD); generalized anxiety disorder; and major depressive disorder/dysthymia. (PageID.54–55.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.55–58.) Regarding her mental impairments, the ALJ considered Listings 12.04, 12.06, and 12.15 and applied the "paragraph B" criteria, finding that Plaintiff was mildly limited in the areas of understanding, remembering, or applying information and interacting with others and moderately limited in the areas of concentrating, persisting, or maintaining pace and adapting or managing oneself. (PageID.57–48.)

The ALJ then found that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except:

> no limits on sitting, standing, or walking; can lift, carry, push, and pull 20 lbs. occasionally and 10 lbs. frequently; never climb ladders, ropes, or scaffolds; no crawling; frequent stooping, crouching, or climbing ramps and stairs; no balance limits; occasionally overhead reach bilaterally; frequent handling and fingering with the left upper extremity; no work at unprotected heights or with dangerous moving machinery; can understand, remember and apply information to perform simple tasks; is able to focus on and complete simple tasks timely; can make simple decisions; and can adapt to occasional changes in the workplace setting.

(PageID.58.)

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work (PageID.64), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found

that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of Garment Sorter, Checker 1, and Router, approximately 157,000 of which existed in the national economy. (PageID.56–57.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Therefore, the ALJ concluded that Plaintiff was not disabled.

## **DISCUSSION**

Plaintiff raises two issues in her appeal: (1) the ALJ failed to comply with the applicable regulation when evaluating the persuasive value of the medical source opinions authored by Plaintiff's treating therapist; and (2) the ALJ failed to properly evaluate Plaintiff's subjective symptoms.  (ECF No. 11 at PageID.804.)

**I.       ALJ's Evaluation of Opinions of Nicole Merchant, M.A.**

The ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.l520c(b)(2) and (3).

6

The ALJ is to conduct this analysis with regard to all opinions, but is not required to give controlling weight to an opinion from any particular source. The former rule, well-known as "the treating physician rule[, thus] no longer applies." *See Takacs v. Kijakazi*, No. 1:20-cv-02120, 2022 WL 447700, at *9 (N.D. Ohio Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 445767 (N.D. Ohio Feb. 14, 2022). "'Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of her reasoning.'" *Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *13 (E.D. Mich. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).

Plaintiff's treating mental health provider, Nichole Merchant, M.A., provided two opinions. On December 14, 2020, Ms. Merchant completed a medical source statement of mental ability to do work-related activities. (PageID.1046–48.) The ALJ evaluated this opinion as follows:

> In December 2020, the claimant's mental health provider Nicole Merchant, M.A., provided an assessment regarding the claimant's mental abilities. Ms. Merchant indicated the claimant had marked limitations in understanding and remembering complex instructions, carrying out complex instructions, making judgments on complex work-related decisions, interacting appropriately with the public, and responding appropriately to usual work situations and to changes in a routine work setting. She indicated the claimant had moderate limitation in making judgments on simple work-related decisions and interacting appropriately with supervisors and coworkers. Ms. Merchant indicated the claimant had mild limitation in understanding and remembering simple instructions and carrying out simple instructions. Ms. Merchant stated the claimant's PTSD-trauma impairment impaired the claimant's focus, memory, information retention and processing, and interpersonal effectiveness. She stated the claimant's PTSD created fight or flight responses, such as avoiding conflicts or creating aggressive situations. Ms. Merchant indicated she relied on diagnostic psychosocial assessments for support (Ex. 22F). This opinion has limited persuasiveness. The claimant's ability to do simple tasks is consistent with her helping her nephews with homeschooling, working/volunteering at schools up to four days per week, and mental status examinations that do not show issues with fund of knowledge, concentration, or memory. Further, the social limitations are not supported or consistent with the

7

> many reports of her staying socially active and being pleasant and cooperative during appointments (Ex. 2F pg. 5; 12F pg. 5; 14F pgs. 18, 34, 37; 16F pgs. 11, 25; 17F pg. 12; 18F pgs. 3, 7; 23F pg. 14, 16, 22, 24; 27F pg. 17, 20, 29). Therefore, the opinion is not supported or consistent with the evidence of record.

(PageID.63–64.)

Ms. Merchant completed a second medical source statement of mental ability to do work-related activities on July 18, 2022. The ALJ evaluated this opinion as follows:

> In July 2022, Ms. Merchant provided another opinion in which she indicated the claimant had marked limitations in understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions. She indicated the claimant had extreme limitations in understanding and executing complex instructions and decisions. She indicated the claimant had extreme limitation in interacting appropriately with the public, marked limitation in interacting with supervisors, and moderate limitation in interacting with coworkers. She found the claimant had marked limitation in responding appropriately to usual work situations and to changes in a routine work setting (Ex. 25F). This opinion is not persuasive, as the extent of limitations are grossly unsupported and inconsistent with the many normal mental status findings and notations that the claimant goes out to dinners/lunches/movies, volunteers at her nephew's school, helped her nephews with home schooling, shopped at garage sales, hosted a baby shower, stayed with her niece at the hospital with her newborn, spends time with friends and family, shops in stores 2-3 hours at a time, and largely cares for her own daily living needs (Ex. 4E; 2F pg. 5; 12F pg. 5; 14F pgs. 18, 34, 37; 16F pgs. 11, 25; 17F pg. 12; 18F pgs. 3, 7; 23F pg. 14, 16, 22, 24; 27F pg. 17, 20, 29).

(PageID.64.)

Plaintiff contends that the ALJ erred in evaluating Ms. Merchant's opinions for several reasons. As an initial matter, Plaintiff's contention that Ms. Merchant's opinions are "inherently persuasive" based solely on her lengthy treatment relationship with Plaintiff and opportunity to observe Plaintiff as a mental health specialist is unconvincing. (ECF No. 10 at PageID.1215.) As set forth above, under the current regulation, the most important factors bearing on an ALJ's consideration of opinion evidence are supportability and reliability. While the source's treatment relationship and specialization are certainly factors that an ALJ is to consider—as the ALJ did here

(PageID.61 (citing Ms. Merchant's treatment notes in Exhibits15F, 23F, and 27F))—Plaintiff cites no authority recognizing any sort of presumption of persuasiveness based solely on those factors.

Plaintiff contends that the ALJ erred in evaluating Ms. Merchant's opinions by focusing "solely" on portions of the mental status examinations in the record showing normal fund of knowledge, concentration, and memory while ignoring Ms. Merchant's findings consistently documenting issues with Plaintiff's mood being, among other things, angry, discouraged, sad, and overwhelmed. (*Id.* at PageID.1215–18.) Plaintiff asserts that the ALJ's assessment of the supportability factor is deficient because she failed to explain why she chose to accept certain findings from mental status examinations over other findings from the same examinations that supported Ms. Merchant's opinion. (*Id.* at PageID.1218.) While it is true that the ALJ did not refer to Ms. Merchant's mood findings when discussing her opinions, in discussing the evidence earlier in the decision, the ALJ noted "findings of sadness, frustration, and anxiety," but observed that Plaintiff's issues were primarily due to "situational stressors" arising from relationship issues, particularly with her husband, as well as pain from her shoulder issues. (PageID.61.) The ALJ also observed that "the record consistently noted the claimant was staying socially active" by spending time with family and friends, including her nieces and nephews; hosting various parties and a baby shower; attending family birthday parties; helping her niece with her newborn at a hospital; volunteering with various activities at her nephew's school; and homeschooling her nieces and nephews during the pandemic. (*Id.* (citing PageID.827, 830, 831, 837, 839, 840, 843, 844, 857, 1062, 1064, 1070, 1072, 1136, 1139).) Plaintiff often reported that she enjoyed these activities. (PageID.857, 1064, 1139, 1145.) The ALJ also noted that despite Ms. Merchant's findings, treatment records from Ms. Merchant and other providers consistently reported otherwise normal mental status findings, including that Plaintiff was well-groomed, pleasant, and cooperative.

9

(PageID.61–62 (citing PageID.521, 746, 800, 816, 819 869–71, 924, 1054, 1056, 1060, 1062–70).) At another point in the decision, in finding that Plaintiff was only mildly limited in interacting with others, the ALJ noted that Plaintiff reported that she went out to dinner with friends three-to-four times per month, went to a movie once per month, got along well with authority figures, and had never been fired or laid off from a job due to problems getting along with others. (PageID.57, 449, 451.)

Reading the decision as a whole, *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review"), it is clear that the ALJ considered Ms. Merchant's mood findings and articulated her rationale for concluding that other evidence demonstrated that Ms. Merchant's opined social restrictions were not warranted. *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829-30 (E.D. Mich. 2017) (ALJ decision must provide accurate and logical bridge between evidence and result and must permit meaningful review). Moreover, there is no indication that the ALJ mischaracterized or inaccurately construed the evidence supporting her findings. To the extent Plaintiff contends that the evidence supported a different outcome, the argument fails because "'[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen*, 800 F.2d at 545).

Nor did the ALJ "play doctor" or "cherry pick" the administrative record as Plaintiff asserts. As the Sixth Circuit has observed, arguments that the ALJ "cherry picked the record are frequently made, but seldom successful, because "the same process can be described

10

more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). In determining that Plaintiff's fairly robust social activity and the generally normal mental status findings weighed against the opined social restrictions, the ALJ did not inappropriately play doctor by substituting her own judgment regarding Plaintiff's mental limitation, but instead performed her duty to determine Plaintiff's RFC by weighing the evidence and resolving conflicts in the record. *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, (6th Cir. 1997)); *see Kern v. Comm'r of Soc. Sec.*, No. 1:23-CV-1339, 2024 WL 2216024, at *10 (N.D. Ohio May 16, 2024) ("The ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

Plaintiff also contends that the ALJ erred by relying on Plaintiff's activities of daily living as inconsistent with Ms. Merchant's opinion. It is true that the Sixth Circuit has observed that an ALJ errs buy equating a claimant's ability to perform "minimal daily functions . . . to typical work activities." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007). Here, however, the activities the ALJ cited, many of which are set forth above, were not minimal or limited, and the ALJ considered them for a specific purpose—determining whether Plaintiff's social activity with family and in public settings was inconsistent with the opined social limitations. It was entirely appropriate for the ALJ to do so. *See Chapman v. Comm'r of Soc. Sec.*, No. 2:18-cv-258, 2018 WL 4292154, at *7 (S.D. Ohio Sept. 10, 2018), *report and recommendation adopted*, 2018 WL 5650011 (S.D. Ohio Oct. 31, 2018) (concluding that substantial evidence supported the ALJ's rejection of opined social limitations as inconsistent with the claimant's reports that "she engaged in a number of social activities including interacting with family, engaging with multiple treatment sources, both her own and her children's, and moderated a social networking art therapy forum . .

11

."); *cf. Primmer v. Comm'r of Soc. Sec.*, No. 2:14-cv-2245, 2015 WL 9474691, at *2 (S.D. Ohio Dec. 29, 2015) (substantial evidence supported the ALJ's determination that the claimant, who testified that she had difficulty being around others and suffered panic attacks, had only moderate limitation in social interaction where she was able to go to the store with her sister-in-law, attended medical appointments on a regular basis, and reported talking with others and interacting with family on a regular basis); *Harvard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV2464, 2015 WL 506976, at *15 (N.D. Ohio Feb. 6, 2015) (holding that the ALJ's finding that the claimant was moderately limited in social function was supported by the claimant's testimony that he was social with a small group, including his family, that he visited his mother and occasionally watched his niece and nephew, and that he regularly went to the library, grocery store, and friends' homes).

In sum, the ALJ properly evaluated Ms. Merchant's opinions under the regulation, and her consideration of those opinions is supported by substantial evidence. Thus, this claim of error lacks merit.

**II.     Plaintiff's Subjective Symptoms**

An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). An ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3) but "is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases). SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly

articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10.

Plaintiff explains that this argument mirrors her argument set forth above regarding the ALJ's consideration of her daily activities and the mental status examinations. (ECF 10 at PageID.1222.) For the reasons set forth above explaining why the ALJ's evaluation of Ms. Merchant's opinions was both proper under the regulation and supported by substantial evidence, the ALJ properly evaluated Plaintiff's subjective symptoms by considering, in addition to other evidence in the record, the mental status examinations, Ms. Merchant's treatment notes, and Plaintiff's function reports. 20 C.F.R. § 1529(c)(3). Moreover, the fact that Plaintiff can point to other evidence in the record that could support a different outcome is not a basis to reverse the ALJ's decision if it is supported by substantial evidence. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . . This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted); *Moss v. Comm'r of Soc. Sec.*, No. 1:20-cv-243, 2021 WL 2282694, at *6 (W.D. Mich. June 4, 2021) (noting that "an ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, if substantial evidence also supports the conclusion that was reached by the ALJ") (citation omitted).

Accordingly, this argument lacks merit.

## **CONCLUSION**

For the foregoing reasons, I recommend that the Commissioner's decision be **affirmed**.

Dated: August 30, 2024                                          /s/ Sally J. Berens
                                                                SALLY J. BERENS
                                                                U.S. Magistrate Judge

# **NOTICE**

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).